IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
PARKERSBURG DIVISION

HARRY F. DEEM, *et al.*,

        Plaintiffs,

vs.

                                    Civil Action No. 6:10-cv-01339
                                    Judge Goodwin

AMES TRUE TEMPER INC., *et al.*,

        Defendants.

### Order Granting Plaintiffs' Motion for Class Certification

This case involves a dispute over the interpretation of contractual language contained in certain collective bargaining agreements and pension agreements entered into by Plaintiffs' collective bargaining representative, United Steelworkers of America, AFL-CIO, Local #1651 ("Union"), and Defendant Ames True Temper, Inc. or its predecessor, O. Ames Co. ("Ames"). The contractual language at issue provided eligible retired Ames employees with a supplemental pension payment that could be used to help defray the cost of insurance following their retirement ("insurance allowance"). The parties disagree on what steps (if any) a retiree needed to take to qualify for the insurance allowance. Plaintiffs contend that the contractual language provides that, in order to qualify for supplemental pension payments, a retiree only needed to have the requisite years of service before retiring. Ames disagrees, and claims that retirees were required have the requisite years of service and must have elected Ames's medical insurance coverage upon retirement.

On September 7, 2011, Plaintiffs filed an unopposed motion for preliminary approval of conditional class certification, requesting the Court conditionally certify the following proposed class:

All individuals who retired from Ames Plant #1 prior to the Shutdown Agreement at any time during the ten years preceding the filing of the Complaint, who claim an entitlement to the insurance supplement in accordance with Section 2, subsection (7) of (i) the September 15, 2001 Pension Agreement between Ames True Temper, Parkersburg, West Virginia and United Steelworkers of America, AFL-CIO, Local Union No. 1651, (ii) the September 19, 1998 Pension Agreement between O. Ames Company, Parkersburg, West Virginia and United Steelworkers of America, AFL-CIO, Local Union No. 1651, (iii) the September 11, 1995, Pension Agreement between O. Ames Co., Parkersburg, West Virginia and United Steelworkers of America AFL-CIO Local Union No. 1651, or (iv) Section 2, subsection (6) of the August 29, 1992, Pension Agreement between O. Ames Co., Parkersburg, West Virginia and United Steelworkers of America AFL-CIO Local Union No. 1651, and who did not sign a release in return for severance benefits.

The parties have subsequently met and conferred and agreed to redefine the class as follows:

All individuals who retired from Ames Plant #1 prior to the Shutdown Agreement at any time during the ten years preceding the filing of the Complaint, who claim an entitlement to the insurance supplement in accordance with Section 2, subsection (7) of (i) the September 15, 2001 Pension Agreement between Ames True Temper, Parkersburg, West Virginia and United Steelworkers of America, AFL-CIO, Local Union No. 1651, (ii) the September 19, 1998 Pension Agreement between O. Ames Company, Parkersburg, West Virginia and United Steelworkers of America, AFL-CIO, Local Union No. 1651, or (iii) the September 11, 1995, Pension Agreement between O. Ames Co., Parkersburg, West Virginia and United Steelworkers of America AFL-CIO Local Union No. 1651, and who did not sign a release in return for severance benefits.

Having considered the parties' pleadings and argument, and for good and sufficient reasons appearing to the Court, the Court grants Plaintiffs' motion and conditionally certifies the redefined class described above.

## I.      Facts and Background

On or around September 11, 1995, September 19, 1998, and September 15, 2001, Ames entered into Pension Agreements with the Union covering the employees working at Ames's Plant #1 in Parkersburg, West Virginia.

Among other things, these Pension Agreements provided that retirees who met certain criteria, including thirty years of service, were eligible to receive pension payments, including an insurance allowance. This insurance allowance was divided into pre- and post-age 65 categories, and the allowance decreased once an eligible retiree reached age 65. For example, the September 19, 1998, Pension Agreement provided that retired employees would receive an insurance allowance as part of their pension if they satisfied various eligibility requirements defined in paragraphs 1, 2, 3, and 5 of the Agreement, which included factors such as age, years of service, and disability. The Pension Agreement then defined the insurance allowance in the following way:

> 7.  Employees retiring after September 18, 1998, under the provisions of paragraphs 1, 2, 3, or 5 of Section 1 of the Pension Agreement, shall be provided insurance coverage as follows[:]
>
> (a)  Any monthly insurance allowance for employees prior to attainment of age sixty-five (65) is capped at the stated premiums outlined below. These premiums outlined below may be applied to CIGNA's equivalent of Provident's Hospital/Surgical Insurance Conversion for F-65078-WV and F-65098.01WV at the time the retiree elects this conversion plan.

### Quarterly Premium

| Males | | Females | |
|---|---|---|---|
| 0-49 | 50-64 | 0-49 | 50-64 |
| $93.24 | $110.09 | $145.91 | $142.01 |

| Maternity | | Children |
|---|---|---|
| 0-34 | 35-49 | $56.07 |
| $82.80 | $27.60 | |

> (b)  Any monthly insurance allowance for employees after attainment of age sixty-five (65) is capped at the stated premium outlined below and may be applied to any Medicare Supplement plan.

3

**Quarterly Premium**

Employee only          $40.68

Employee with spouse $81.36

The Pension Agreement also provided that "[a]ny insurance allowance provided for under this paragraph . . . will commence with the first regular monthly pension payment." The 1995 and 2001 Pension Agreements had identical language relative to the insurance allowance.

Plaintiffs allege they have the requisite years of service to qualify for the insurance allowance under the relevant pension agreements. Nevertheless, two of the representative Plaintiffs did not receive any insurance allowance. One of the named Plaintiffs, McKinniss, is receiving the post-age 65 insurance allowance, but claims he did not receive the pre-age 65 insurance allowance. Further, all of the named Plaintiffs deny that they elected Ames's medical insurance coverage upon retirement.

Based on these allegations, Plaintiffs argue that they are entitled to insurance allowances, and that Ames has breached its contractual obligations by refusing to pay those allowances. Plaintiffs also assert that Ames's actions breached its fiduciary duty and other obligations under ERISA. Ames disagrees, asserting that Plaintiffs are not eligible for insurance allowances since they did not elect Ames's medical insurance coverage and that the administration of the collective bargaining agreements and pension agreements, as agreed to by Ames and the Union, were not violated by Ames's failure to provide the claimed insurance allowances. Further, Ames asserts that putative class members who retired prior to July 22, 2000, i.e, ten years before the lawsuit in this matter was filed, are not covered in the class definition as agreed to between the parties and are time-barred from asserting claims.

4

## II.      Conditional Certification of the Redefined Class is Appropriate

Certification requires the named plaintiffs to satisfy all of the prerequisites of Federal Rule of Civil Procedure 23(a), and fall within one of the three categories enumerated in Rule 23(b). *Gunnells v. Healthplan Servs., Inc.,* 348 F.3d 417, 423 (4th Cir. 2003). Accordingly, the named plaintiffs must demonstrate that: (1) the class is so numerous such that joinder of all members is impracticable; (2) there are factual and legal issues common to the class; (3) the claims and defenses of the representative parties are typical of those held by the class; and (4) the representative parties will fairly and adequately represent and protect the interests of the class. Fed. R. Civ. P. 23; *Gunnells,* 348 F.3d at 423. "The Fourth Circuit reads Rule 23 liberally and applies it flexibly to 'best serve the ends of justice for affected parties and promote judicial efficiencies.'" *Helmick v. Columbia Gas Transmission*, No. 2:07-cv-00743, 2010 WL 2671506, at *9 (July 1, 2010, S.D. W. Va.) (Goodwin, J.) (citing *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 237 (S.D. W. Va. 2005) (quoting *Gunnells*, 348 F.3d at 423)).

Rule 23(b)(1) provides that a class action may be maintained if "adjudications with respect to individual class members . . . would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B). Courts have found that 23(b)(1)(B) is satisfied when there is a risk that "[s]eparate lawsuits could result in inconsistent judgments on the merits of such claims." *Kennedy v. United Healthcare of Ohio, Inc.*, 206 F.R.D. 191, 199 (S.D. Ohio 2002).

Rule 23(b)(3) requires that the questions of law or fact common to all class members predominate over questions pertaining to individual members. Common questions predominate if class-wide adjudication of the common issues will significantly advance the adjudication of

5

the merits of all class members' claims.  "The predominance inquiry 'tests whether proposed

classes are sufficiently cohesive to warrant adjudication by representation.'" *Lienhart v. Dryvit*

*Systems, Inc.,* 255 F.3d 138, 147 (4th Cir. 2001) (quoting *Amchem Prod., Inc. v. Windsor*, 521

U.S. 591, 623 (1997)).  Rule 23(b)(3) "does not impose an overly burdensome standard for

plaintiffs seeking class certification." *Amchem Prods., Inc.*, 521 U.S. at 615.

> A.      *The Redefined Class Satisfies the Requirements set forth in Rule 23(a).*

> > 1.      Numerosity.

Rule 23(a)(1) requires that the class be of sufficient size that joinder of all members is

"impracticable."  Fed. R. Civ. P. 23(a)(1).  In determining whether joinder is impracticable, a

court should analyze the factual circumstances of the case rather than relying on numbers alone.

*Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n,* 375 F.2d 648, 653 (4th Cir. 1967)

(holding that "eighteen is a sufficiently large number to constitute a class in the existing

circumstances" and noting that "[n]o specified number is needed to maintain a class action under

Fed. R. Civ. P. 23; application of the rule is to be considered in light of the particular

circumstances of the case"); *see also Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir.

1984) (same) (citing *Cypress*); *Christman v. Am. Cyanamid Co.,* 92 F.R.D. 441, 451 (N.D. W.

Va. 1981) ("Impracticality of joinder is not determined by a numerical test alone.").

The parties agree that there are over 100 putative class members (including spouses of

deceased class members) who have the requisite years of service to arguably qualify for an

insurance allowance, but who are not receiving such allowance.  Individual joinder of these class

members is impracticable given the fact that the average claim will not exceed eight thousand

dollars (therefore making joinder less likely), and because the class members are dispersed

across the nation.  Additionally, courts have held that an action aimed at a "company-wide

policy" can give rise to a reasonable inference of numerosity.  *Hewlett v. Premier Salons*, 185

F.R.D. 211, 216 (D. Md. 1997).

        2.      Commonality.

      Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to

the class." Fed. R. Civ. P. 23(a)(2).  "This factor is stated in the disjunctive," meaning that either

common questions of law or fact can establish sufficient commonality.  *Black v. Rhone-Poulenc,*

*Inc.*, 173 F.R.D. 156, 161 (S.D. W. Va. 1996).  To show commonality,

> [the class members'] claims must depend upon a common contention—for
> example, the assertion of discriminatory bias on the part of the same supervisor.
> That common contention, moreover, must be of such a nature that it is capable of
> classwide resolution—which means that a determination of its truth or falsity will
> resolve an issue that is central to the validity of each one of the claims in one
> stroke.

*Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 S.Ct. 2541, 2551 (2011).  That is, the class

litigation must be capable of generating common answers.  *Id.* (quoting Nagareda, Class

Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)).

      This action implicates a central and overarching common question of whether or not a

retiree was required to elect Ames' medical insurance coverage upon retirement in order to

qualify for the pre- and post-age 65 insurance allowances.  In order to answer this question, the

trier of fact will be required to analyze the administration of the Pension Agreements and the

history of negotiations between the Union and Ames, as well as the uniform contract language

contained in the subject Pension Agreements. Further, the answer will resolve this action's

central liability question.

3.     Typicality.

As reiterated by the Supreme Court in *Dukes*,

> the commonality and typicality requires of Rule 23(a) tend to merge. Both serve
> as guideposts for determining whether under the particular circumstances
> maintenance of a class action is economical and whether the named plaintiff's
> claim and the class claims are so interrelated that the interests of the class
> members will be fairly and adequately protected in their absence.

*Id.*, ___ U.S. ___, 131 S. Ct. at 2551 n.5 (quoting *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S.

147, 157-58 n.13 (1982)) (internal marks omitted).   The representative Plaintiffs' claims are

aligned with those of the putative class.  All of the representative Plaintiffs are retired Ames

employees with at least thirty years of service.  Three of the representative Plaintiffs (Deem,

Patterson and Sams), did not receive any insurance allowance.  One of the representative

Plaintiffs, McKinniss, is receiving the post-age 65 insurance allowance, but did not receive the

pre-age 65 insurance allowance.  Further, none of the representative Plaintiffs elected Ames's

medical insurance coverage upon retirement.

4.     Adequacy.

Rule 23(a)(4) requires that the class representative and class counsel adequately represent

the class.  This requirement also tends to merge with the typicality and commonality

requirements, "although [it] also raises concerns about the competency of class counsel and

conflicts of interest." *Dukes*, ___U.S. ___, 131 S. Ct. at 2551 n.5 (quoting *Gen. Telephone Co.*

*of Southwest*, 457 U.S. at 157-58 n.13 (quotation marks omitted)).  For a conflict of interest to

prevent class certification, it must "be fundamental" and "go to the heart of the litigation;" it may

not be "merely speculative or hypothetical." *Gunnells*, 348 F.3d at 430-31 (citations omitted).

The representative Plaintiffs have no interests that are antagonistic to or conflict with the

interests of the putative class as a whole.  Rather, all share a common interest with other putative

class members, and they have willingly stepped forward to pursue their claims on a class-wide basis. In addition, Bailey & Glasser LLP, and attorneys Gregory Porter and Jonathan Marshall, are qualified and able to represent the class. Bailey & Glasser LLP, Mr. Porter, and Mr. Marshall have wide-ranging experience litigating consumer protection, class actions, and other complex cases.

B.      *The Redefined Class Satisfies the Requirements set forth in Rule 23(b)(1)(B).*

Rule 23(b)(1)(B) provides that a class action may be maintained if "adjudications with respect to individual class members . . . would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. Pro. 23(b)(1)(B). Courts have found that 23(b)(1)(B) is satisfied when there is a risk that "[s]eparate lawsuits could result in inconsistent judgments on the merits of such claims." *Kennedy*, 206 F.R.D. at 199. In *Kennedy*, the court certified a class because it found "[s]imply stated, one court could determine that defendant's practice violated ERISA, while another court could conclude that it did not." *Id.*; *see also Reese v. CNH Am., LLC*, 227 F.R.D. 483, 489 (E.D. Mich. 2005) (certifying a class of retirees in a suit for continuing retiree health care benefits where there was "a risk of inconsistent results if the 1450 retirees and surviving spouses of retirees file[d] individual lawsuits to challenge [the defendant's] threatened modification of their health insurance benefits.").

The risk of inconsistent results warrants class certification. Plaintiffs are challenging Ames's refusal to pay the insurance allowance supplement to retirees who did not elect Ames's medical insurance coverage. The Court is persuaded that it is more logical for one court to interpret the language of pension agreements rather than risk multiple courts reaching

inconsistent conclusions based on the same contractual language and leaving Ames and retirees subject to different standards depending on the jurisdiction.

      C.     *The Redefined Class Satisfies the Requirements set forth in Rule 23(b)(3).*

Rule 23(b)(3) provides that a class action may be maintained if "questions of law or fact common to class members predominate over any questions affecting only individual members, and [if] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

      1.     Predominance.

"The predominance inquiry 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Lienhart*, 255 F.3d at 147 (quoting *Amchem Prod., Inc.*, 521 U.S. at 623). This action is predominated by a central and overarching common question (i.e., whether or not a retiree was required to elect Ames's medical insurance coverage upon retirement in order to qualify for the pre- and post-age 65 insurance allowances).

      2.     Superiority.

Rule 23(b)(3) "requires that class action be superior to other methods of adjudication so that resolution by class action will 'achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem*, 521 U.S. at 615. A class action is the superior method for resolving this action. Putative class members would have little interest in prosecuting individual actions given the expense of the litigation and the small potential for reward in an individual action. Additionally and as discussed above, this case presents no particular management difficulties.

### III. Appointment of Class Counsel and Notice Administration

Rule 23(g) requires that a court certifying a class also must appoint class counsel. It directs a court to consider several factors, including:

> [t]he work counsel has done in identifying or investigating potential claims in the action; [c]ounsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; [c]ounsel's knowledge of the applicable law; and [t]he resources counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(C)(i). Moreover, "[i]n the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to prosecute vigorously the action on behalf of the class." *Hewlett*, 185 F.R.D. at 218. Proposed class counsel, Bailey & Glasser LLP, and attorneys Gregory Porter and Jonathan Marshall, are amply qualified and able to represent the class inasmuch as they have wide-ranging experience litigating consumer protection, class actions, and other complex cases (including ERISA-based claims); and have litigated and resolved numerous class actions in both state and federal court.

Rule 23(c)(2) requires "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The type of notice to which a member of a class is entitled depends upon the information available to the parties about that person, and the possible methods of identification. *See In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1098 (5th Cir. 1977) (*citing Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)). In determining the reasonableness of the effort required, the court must look to the "anticipated results, costs, and amount involved." *In re Nissan*, 552 F.2d at 1099.

Because Plaintiffs' and Ames's records reflect the name, address and pertinent retirement information of all of class members, the Court will adopt Plaintiffs' notice regime. First-class mailed notice will provide the best notice to class members. The proposed Notice regime will

11

require that all putative class members receive first-class mailed notice.  Prior to mailing, however, all addresses are to be checked against the National Change of Address database maintained by the United States Postal Service; notices returned with forwarding addresses shall be promptly remailed; and notices returned without a forwarding address shall be remailed after a LexisNexis records search.  The Court **ADOPTS** Plaintiffs' proposed Notice attached to this Order as Exhibit A.

Notice shall be mailed no later than thirty days after entry of this Order.  Putative class members shall have forty-five days (45) to exclude themselves from the class.

In light of the foregoing, and for good and sufficient reasons appearing to the Court **ORDERS** that the Plaintiffs' motion for preliminary approval of conditional class certification is **GRANTED**, and that the following putative class is conditionally certified:

> All individuals who retired from Ames Plant #1 prior to the Shutdown Agreement at any time during the ten years preceding the filing of the Complaint, who claim an entitlement to the insurance supplement in accordance with Section 2, subsection (7) of (i) the September 15, 2001 Pension Agreement between Ames True Temper, Parkersburg, West Virginia and United Steelworkers of America, AFL-CIO, Local Union No. 1651, (ii) the September 19, 1998 Pension Agreement between O. Ames Company, Parkersburg, West Virginia and United Steelworkers of America, AFL-CIO, Local Union No. 1651, or (iii) the September 11, 1995, Pension Agreement between O. Ames Co., Parkersburg, West Virginia and United Steelworkers of America AFL-CIO Local Union No. 1651, and who did not sign a release in return for severance benefits.

Additionally, the Court **ORDERS** that the Scheduling Order is set aside.  The parties are directed to meet and confer and develop a new proposed Scheduling Order and merits discovery plan for submission to the court no later than December 16, 2011.

ENTER:  November 23, 2011

Joseph R. Goodwin, Chief Judge

12